DOCTORS, INC. a/k/a Doctors Hospital

v.

BLUE CROSS OF GREATER PHILADEL-PHIA, a/k/a Associated Hospital Service of Philadelphia and Hospital Survey Committee, Inc.

Civ. A. No. 73–1057.

United States District Court,
E. D. Pennsylvania.

Aug. 13, 1975.

**6**

John Francis Gough, Michael H. Malin, John M. Fowler, White & Williams, Philadelphia, Pa., for plaintiff.

Morgan, Lewis & Bockius, Miles W. Kirkpatrick, Stephen W. Armstrong, Raymond T. Cullen, Philadelphia, Pa., for Blue Cross.

Henry T. Reath, Jane D. Elliott, Duane, Morris & Heckscher, Philadelphia, Pa., for Hospital Survey.

## MEMORANDUM

GORBEY, District Judge.

This is an antitrust action brought by Doctors, Inc., a/k/a Doctors Hospital (hereinafter "Doctors"), a non-profit hospital located in Philadelphia, against Blue Cross of Greater Philadelphia, a/k/a Associated Hospital Service of Philadelphia (hereinafter "Blue Cross") and Hospital Survey Committee, Inc. (hereinafter "HSC"), a private non-profit corporation, which serves as an advisory planning agency with respect to the coordination and planning of hospital and health services in Greater Philadelphia.

The complaint alleges: (1) monopolization by Blue Cross of the third-party hospital services payer market in the greater Philadelphia area and the use of that power by Blue Cross and HSC to determine which hospital services will be provided in the greater Philadelphia area and who will provide them; (2) an illegal contract, combination and conspiracy by Blue Cross, HSC and others to eliminate competition in the hospital services market throughout the greater Philadelphia area; (3) an illegal refusal by Blue Cross with the cooperation of HSC to deal with Doctors; and (4) an illegal boycott of Doctors induced by Blue Cross and HSC.

Basically, Doctors' claim is that pursuant to the Hospital Agreement of 1971 between Blue Cross and Philadelphia area hospitals, including Doctors, Blue Cross, on the advice of HSC, determined that hospital services being performed in Philadelphia by Doctors were unnecessary and therefore Blue Cross refused to continue reimbursements to Doctors for hospital care rendered to Blue Cross subscribers and Blue Cross refused to renew the hospital agreement with Doctors for reimbursement. The direct result of

Blue Cross' refusals was that Doctors was compelled to go out of business. Doctors further claims that defendants induced a group boycott by Doctors' patients (before Doctors closed) by Blue Cross' publicly advertising that reimbursement for services received at Doctors would thereafter be on a non-member basis.

The complaint was initially dismissed on the grounds that plaintiff was not in interstate commerce, but the district court's decision was overruled by the Third Circuit Court of Appeals on December 28, 1973. Since that time HSC has filed a motion for summary judgment on the grounds that it was not a co-conspirator. Blue Cross has filed a motion for summary judgment claiming that the conduct complained of is exempted from the antitrust laws by the provisions of the McCarran-Ferguson Act, 15 U.S.C. §§ 1011 to 1015, and that the conduct complained of constitutes state action which is immune from the antitrust laws under the doctrine of *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Since a favorable decision on Blue Cross' motion would render it unnecessary to discuss at length HSC's motion, I will first discuss the Blue Cross motion.

The McCarran-Ferguson Act provides in part:

"§ 1012. Regulation by State law; Federal law relating specifically to insurance: applicability of certain Federal laws after June 30, 1948.

(a) The business of insurance, and every person engaged therein shall be subject to the laws of the several States which relate to the regulation or taxation of such business.

(b) No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: *Provided*, That after June 30, 1948, the Act of July 2, 1890, as amended, known as the Sherman Act, and the Act of October 15, 1914, as amended, known as the Clayton

Act, and the Act of September 26, 1914, known as the Federal Trade Commission Act, as amended, shall be applicable to the business of insurance to the extent that such business is not regulated by State law."

15 U.S.C. § 1012.

The Supreme Court decision in *Parker v. Brown, supra*, established the doctrine that there is no violation of the Sherman Act "where a restraint upon trade or monopolization is the result of valid governmental action, as opposed to private action". *Eastern Rail. Pres. Conf. v. Noerr Motor Frgt., Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464. To meet the "State action" exemption to the antitrust laws provided by *Parker v. Brown, supra* and the McCarran-Ferguson Act, Blue Cross must affirmatively show that the Insurance Department has the legislative power and authority to regulate or sanction the action taken by Blue Cross pursuant to Section 24 of the 1971 Hospital Agreement. Section 24.5 of this agreement provides:

"The provider shall permit HSC to evaluate once every three years . . . the need for existing facilities of and services supplied by provider. The evaluation shall cover facilities which do not conform to the then current requirements for new construction in respects which render them unsafe for patients. If the report of HSC as submitted to Blue Cross and the provider recommends that a facility or a service of provider is no longer needed, it shall specify a reasonable time period by the end of which the facility or service must be eliminated."

Blue Cross alleges and we agree that:

"At all times material to this action, Blue Cross existed and operated pursuant to the Nonprofit Hospital Plan Act, Act of June 21, 1937, P.L.1988 [1948], § 1 *et seq.*, 40 P.S. § 1401, *et seq.* as amended (although for present purposes not materially altered) by the Hospital Plan Corporations Act, Act of Nov. 15, 1972, P.L. [1063], No. 271, § 6101 *et seq.*, 40 Pa.S. § 6101 *et seq.*

"Both the original and amended statute specifically provide that the rates charged by Blue Cross to its subscribers as well as the rates of payments to hospitals by Blue Cross pursuant to contracts between Blue Cross and hospitals must be approved in advance by the Insurance Department of the Commonwealth of Pennsylvania. Prior approval is also required of all contracts with hospitals. See 40 P.S. § 1404 and 40 Pa.S. § 6124. Section 1404 provides, in pertinent part: 'The rates charged to subscribers by nonprofit corporations, subject to the provisions of this act, all rates of payments to hospitals made by such corporations pursuant to the contracts provided for in this act, all acquisition costs in connection with the solicitation of subscribers to such hospital plans, the reserves to be maintained by such corporations, the certificates issued by such corporations representing their subscribers' agreements, and any and all contracts entered into by any such corporation with any hospital, shall, at all times, be subject to the prior approval of the Insurance Department. Applications for such approval shall be made to the Insurance Department in such form, and shall set forth such information as the department may require. If any such application is not approved by the department, notice thereof shall forthwith be served on the applicant, either personally or by mail. Within thirty days from the date of such notice, the applicant may apply to the court of common pleas of Dauphin County by petition and a rule to show cause why the action of the department should not be set aside, and the application approved.' "
(Pages 3–4 of Blue Cross' memorandum in support of motion for summary judgment.)

It is clear that the State Insurance Commission has the authority to regulate Blue Cross. What is not so clear, according to Doctors Hospital, is whether or not the Insurance Commissioner had the authority to insist that Blue Cross include a section such as Section 24 in its contract, *supra*, before the Insurance Commissioner would approve any contract.

Doctors objected to the admission of certain affidavits containing statements of past Insurance Commissioners which establish that it was definitely the Insurance Department that fostered Section 24 of the 1971 agreement. I have considered decisions and adjudications of past Insurance Commissioners but not letters written to Blue Cross from the Insurance Department. The evidence revealed is too overwhelming not to believe that the Insurance Department wanted this section, wanted the action alleged to be illegal here, and that if such action was not provided for in the agreement, the agreement would not be approved.

Examples of this evidence include:

1. On April 15, 1958, Insurance Commissioner Francis R. Smith, in his Adjudication In the Matter of the Filing of the Associated Hospital Service of Philadelphia (now Blue Cross), directed Blue Cross to take action for the purpose of bringing about economies in the cost of hospital operation. Quoting from the Adjudication:

"Each Blue Cross Plan subject to these adjudications shall individually or collectively solicit the assistance and cooperation of the hospitals served by them, hospital councils, and other interested persons, in exploring all areas of hospital administration to determine where economies can be made."

2. On July 13, 1970. Insurance Commissioner George F. Reed entered a decision "with regard to Rate Adjustment Requests filed by Blue Cross of Greater Philadelphia" which provided in part:

"As Blue Cross is a major purchaser and its subscribers collectively a major consumer of hospital services, Blue Cross must act vigorously on behalf of its subscribers to make certain that they are, in fact, being well served. *Blue Cross must exercise its very considerable influence in order to assure that the health care delivery system shall function as efficiently and economically as possible.*"
(Emphasis added.)

Therefore, the only issue of any substance which remains is whether or not the "business of insurance" includes the Insurance Commissioner and the insurance companies exerting pressure on hospitals to do away with hospital services which they consider unnecessary. That is, did the Insurance Commissioner have the statutory authority to order Blue Cross to "exercise its . . . influence" to bring about economies in hospital services?

In *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572, the Supreme Court said that:

> "It is not enough that . . . anti-competitive conduct is 'prompted' by state action; rather, anti-competitive activities must be compelled by direction of the State acting as a sovereign."

In *Goldfarb* the plaintiffs had contracted to buy a home in Fairfax County, Virginia. The financing agents had required them to secure title insurance. The only way they could get title insurance was for a member of the Virginia State Bar to perform a title examination. Plaintiffs had contacted numerous attorneys, each one stating that he would perform the title examination for a fee which was set by the Fairfax County Bar Association. Plaintiffs challenged this minimum fee schedule as violative of Section 1 of the Sherman Act. The Virginia State Bar and the Fairfax County Bar Association defended the action on the grounds that they were exempt from the Sherman Act as "state action" within the meaning of *Parker v. Brown*. There is no specific statutory authority whereby the state bar association could set this minimum. The Supreme Court held that "The fact that the state bar is a state agency for some limited purposes does not create an antitrust shield that allows it to foster anti-competitive practices for the benefit of its members." It appears to this court that *Goldfarb* did not overrule *Parker v. Brown*, rather it clarified what requirements must be met in order that specific conduct can be exempted from the provisions of the anti-trust laws. First, the restraint of trade must be the result of state action, not pri-

vate action. Second, the state action must be valid. That is, there must be specific statutory authority for the state agency to act. Third, the state must be acting within the sphere of that specific statutory authority.

### THE BUSINESS OF INSURANCE

In 1969, the Supreme Court had the occasion to consider the scope of the McCarran-Ferguson exemption. It was held in that decision that:

> "The statute did not purport to make the States supreme in regulating all the activities of insurance companies; its language refers not to the persons or companies who are subject to state regulation, but to laws 'regulating the business of insurance'. Insurance companies may do many things which are subject to paramount federal regulation; only when they are engaged in the 'business of insurance' does the statute apply . . . Congress was concerned with the type of state regulation that centers around the contract of insurance . . . The relationship between insurer and insured, the type of policy which could be issued, its reliability, interpretation, and enforcement—these were the core of the 'business of insurance'. Undoubtedly, other activities of insurance companies relate so closely to their status as reliable insurers that they too must be placed in the same class. But whatever the exact scope of the statutory term, it is clear where the focus was—it was on the relationship between the insurance company and the policy holder. Statutes aimed at protecting or regulating this relationship, directly or indirectly are laws regulating the 'business of insurance'." *SEC v. National Securities, Inc.*, 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668.

In *Travelers Insurance Co. v. Blue Cross of Western Pennsylvania*, 481 F.2d 80 (3d Cir. 1973), the Third Circuit discussed what should be considered a part of "business of insurance" within the McCarran-Ferguson Act. In this case, Travelers Insurance Company objected to a standard contract

which Blue Cross of Western Pennsylvania had with 101 hospitals in that area which contract prescribed the amounts and terms under which Blue Cross would pay for services rendered its subscribers. Blue Cross of Western Pennsylvania reimbursed hospitals only for audited costs subject to a ceiling; and these costs did not include any portion of the general hospital expenses of capital construction, of providing free services to indigents, and of providing services to patients who default. Because of these limitations, Blue Cross of Western Pennsylvania paid some 14 to 15 percent less than the amounts that non-Blue Cross patients were charged. Consequently, Blue Cross of Western Pennsylvania quoted rates for hospitalization insurance correspondingly lower than the rates of private insurance companies such as Travelers. The district court found and the Third Circuit affirmed that the inter-relationship of hospital payments and subscribers' rates was such that Blue Cross' arrangement with hospitals should be considered part of the business of insurance. In so affirming, the Third Circuit relied on testimony given by the then Insurance Commissioner Herbert S. Denenberg. Such testimony reads in part:

"If you do not have a sound contract between Blue Cross and the hospitals that controls costs and *quality*, then the Blue Cross rate to the subscriber is going to be unreasonable. So these are typically approached together. 'Both at the hearings and in our adjudication we made it crystal clear that we think that these two items, the contract with the hospitals and the rates to the subscribers are part of the same package and we have to regulate both of them together or that we cannot provide health delivery to the public at the most reasonable cost possible.'"

It is therefore readily apparent from the reading of the TRAVELERS case that the Third Circuit is approving the actions of the Insurance Commissioner of Pennsylvania when he exerts pressure on the large insurance companies to get them to exercise their power over the hospitals to force the hospitals to cut costs wherever possible. This is exactly what Blue Cross was doing in our case at the bequest of the Insurance Commissioner. Therefore, since the McCarran-Ferguson exemption was applicable in *Travelers Company v. Blue Cross of Western Pennsylvania, supra,* I hold today that the McCarran-Ferguson exemption is applicable in *Doctors, Inc. v. Blue Cross of Greater Philadelphia.*

Plaintiff included in its memorandum contra Blue Cross' motion for summary judgment a copy of a Bill introduced into the Pennsylvania Senate on January 7, 1975, which if passed would give to the Pennsylvania Department of Health the power to conduct inspections, investigations, audits, etc., concerning the need for certain health care facilities or services in Pennsylvania. The Health Department would further have the power to refuse to renew certificates of need for health care providers, thereby accomplishing the same thing which the Insurance Department has for the past fifteen years been attempting to accomplish. Just because certain Senators in Pennsylvania have determined that these duties should in the future be handled by the Department of Health does not mean that the Insurance Department has overstepped its bounds in the past by assuming these duties. I hold today that the Insurance Department was justified in trying to get Blue Cross of Philadelphia to exert pressure on the Philadelphia hospitals to limit or do away with unnecessary services in order that insurance rates in Pennsylvania could be lowered. The only way to lower insurance rates in Pennsylvania or anywhere would be to lower costs of health care. Therefore, it is clearly within the business of insurance to try to get the health care providers to cut costs.

Finally, the McCarran-Ferguson Act does not protect "boycott, coercion or intimidation". 481 F.2d at 84. The fact that Blue Cross publicly notified its subscribers that after December 1, 1972, that "reimbursement by Blue Cross to Doctors Hospital will be denied for all patients ad-

mitted on or after December 1, 1972"[1] cannot be considered boycott, coercion or intimidation. Blue Cross was merely notifying its subscribers of the action which it had taken, although the effect would be that Blue Cross' subscribers would go to hospitals other than Doctors.

Inasmuch as I have determined that Blue Cross' conduct falls within the McCarran-Ferguson exemption, and is therefore not violative of the antitrust laws, I must also grant summary judgment for defendant HSC as it is axiomatic that if Blue Cross has not violated the antitrust laws, HSC could not be guilty of conspiring with Blue Cross to violate those laws.

1. *The Philadelphia Inquirer*, Thursday, November 30, 1972.